## COMMONWEALTH, by the Bank Commissioners, *versus* The President &c. of the FARMERS AND MECHANICS BANK.

The *St.* 1838, *c.* 14, provides that bank commissioners shall be appointed by the governor, that they shall visit the banks and shall have free access to their vaults, books and papers, and shall make all such inquiries as may be necessary to ascertain the condition of the banks and their ability to fulfil their engagements, and whether they have complied with the provisions of law, and may summon and examine, under oath, the officers and agents of the banks, in relation to the transactions and condition of the banks, and that an officer or agent who shall refuse, " without justifiable cause," to appear and testify when thereto required, shall be subject to fine or imprisonment ; and if upon examination of any bank they shall be of opinion that it is insolvent, or that its condition is such as to render its further progress hazardous to the public, and that it has exceeded its powers or has failed to comply with all of the rules, restrictions and conditions provided by law, they may apply to a justice of the Supreme Judicial Court, to issue an injunction to restrain such corporation, in whole or in part, from further proceeding with its business, until a hearing of the corporation can be had, and the justice shall forthwith issue such process, and after a full hearing of the corporation upon the matters aforesaid, may dissolve or modify the injunction or make it perpetual, and, at his discretion, appoint a receiver. It was *held*, that the statute is not unconstitutional on the ground of being an assumption by the legislature of judicial power in making it the duty of the judge, in a particular case, to perform a judicial act; for, on the contrary, it is a general law, in regard to all banks, that in a given state of facts an injunction shall issue.

Neither is it unconstitutional on the ground of being a usurpation of judicial power, in requiring the justice, in the first instance, on the complaint of the bank commissioners, without a hearing of evidence to satisfy his own mind, to issue an injunction ; the effect of it is, to declare that the representation made by the commissioners, upon such examination, of such facts, shall be *primâ facie* evidence that the bank is acting unlawfully and that its further operation will be hazardous to the community.

Neither is it unconstitutional on the ground of its compelling the officers and agents of a bank to furnish evidence to criminate themselves ; for (among other reasons) it imposes a penalty only upon those who " without justifiable cause " refuse to testify.

Nor is it unconstitutional on the ground that a suspension of the proceedings of a bank by the injunction, diminishes the period for which the bank is by its charter empowered to act as a corporation ; for as the bank may violate its charter or the law, there must be some mode prescribed for a judicial inquiry into the fact and for giving redress to parties who may have suffered, and the injunction is not an arbitrary suspension of the corporate powers of the bank, but a species of compulsory process entirely consonant to the course of the administration of justice in like cases.

BILL in equity by Waldo Flint, Julius Rockwell and Jonathan Shove, as bank commissioners. The commissioners

represent, that upon an examination of the Farmers and Mechanics Bank in Adams South Village, they are all of the opinion, that the condition of the bank is such as to render its further progress hazardous to the public, and that it has exceeded its powers, and has failed to comply with all the rules, restrictions and conditions provided by law, in the following particulars, to wit, — that it went into operation before one half, at least, of its capital stock had been paid in gold and silver money, &c. ; that the whole of the capital stock was not paid within the time limited therefor in the act of incorporation and the additional act of 1837, c. 108 ; that loans were made to certain supposed stockholders, before the full amount of their respective shares had been paid ; and that a large amount of the capital stock was sold and transferred before the whole amount thereof had been paid in ; — wherefore the commissioners pray, that the bank may be enjoined to proceed no further in the business for which its act of incorporation was granted, and that a receiver may be appointed to take possession of all the property of the corporation, and to apply the same in discharge of the liabilities of the corporation.

The bill was filed in the clerk's office of this Court for the county of Suffolk, in October, 1838, and upon application to one of the justices a limited injunction was granted, to prohibit the bank from issuing bills or diminishing the amount of their assets, until the further order of the Court or some one of the justices thereof, and a time was fixed for hearing the defendants for that purpose, at a period of about fourteen days from the time of granting the injunction. An answer was subsequently filed, but some exceptions being made to it, a supplementary or amended answer was filed.

The defendants, in their answer, allege that the bank was incorporated on the 1st of April, 1836 ; ( St. 1836, c. 124 ;) that the act under which the commissioners derive their authority, was passed in 1839 ; ( St. 1839, c. 14 ;) that this act has never been adopted, accepted or assented to by the defendants ; that it does not authorize the commissioners to maintain this bill, or to obtain or continue the injunction which has been ordered or to obtain another ; that it was not intended to apply to charters and banks granted and created before its passage ;

Commonwealth<br>v.<br>Farmers and Mechanics Bank.

that if so intended, it was such an act as the legislature had no rightful authority to make, and as against the defendants, it is inoperative and void ; that the bank was to be entitled to all the powers and privileges, and subject to all the duties, liabilities and requirements, contained in the 36th chapter of the Revised Statutes ; that it was to exist until the year 1851, and to be subject to that chapter and the general laws of the land, and to act and operate as a bank in the discretion of its directors and stockholders, until the lawful repeal or expiration of its charter. And the defendants deny that the condition of the bank is such as to render its further progress hazardous to the public, and that it has exceeded its powers and has failed to comply with all the rules and restrictions provided by law, as charged in the bill.

*March 6th.*    *Choate*, for the defendants, moved that the injunction be dissolved, or rather be adjudged a nullity, on the ground that the legislature had no authority to pass the *St.* 1838, *c.* 14. This act provides, that bank commissioners shall be appointed by the governor ; that they shall visit every bank and shall have free access to its vaults, books and papers, that they may examine under oath, the officers or agents of the bank in relation to the transactions and condition of the bank, and that any person who shall refuse, without justifiable cause, to testify, shall be subject to fine or imprisonment ; and by § 5, that if upon examination of any bank, " a majority of said commissioners shall be of opinion that the same is insolvent, or that its condition is such as to render its further progress hazardous to the public or to those having funds in its custody, and also, that the said bank has exceeded its powers or has failed to comply with all of the rules, restrictions and conditions provided by law, they may apply to some one of the justices of the Supreme Judicial Court, to issue an injunction to restrain such corporation, in whole or in part, from further proceeding with its business, until a hearing of the said corporation may be had, and said justice shall forthwith issue such process, and after a full hearing of said corporation upon the matters aforesaid, may dissolve or modify the said injunction or make the same perpetual, and make such orders and decrees to suspend, restrain or prohibit the further prosecuting of the business of

such corporation, as may be needful in the premises, according to the course of chancery proceedings, and, at his discretion, may appoint agents or receivers to take possession of the property and effects of the corporation," &c.

The legislature here assume a visitatorial power over banks, which was not reserved in the defendants' charter. The defendants are expressly made subject to the provisions in the 36th chapter of the Revised Statutes ; the 40th section of which enacts, that any *committee* appointed by the *legislature* for the purpose, may examine into the doings of any bank, and shall have free access to its books and vaults ; and if upon such an examination it shall appear, and after a hearing of said bank thereon, it shall be determined by the legislature, that said bank has exceeded its powers or has failed to comply with any of the rules, restrictions and conditions provided by law, its charter may be declared forfeited. Instead of a committee of the legislature, the act of 1838 provides for a permanent board of commissioners, to be appointed by the governor ; and it gives them power to examine the officers of the bank upon oath, and upon the application of the commissioners to a justice of this Court, an injunction is to be issued, without the exercise of any judicial discretion on the part of the justice. In general, a visitatorial power reserved by the government, is to be exercised by the courts. 2 Kyd on Corp. 174 ; 2 Kent's Comm. (3d ed.) 300 ; *Dartmouth College* v. *Woodward*, 4 Wheaton, 663, 698 ; *Terrett* v. *Taylor*, 9 Cranch, 51, 52. In saying that an injunction *shall* issue, the legislature assume power belonging to the judiciary. An injunction is a judicial writ, granted after a judicial examination. *Att. Gen.* v. *Bank of Chenango*, 1 Hopkins's Ch. R. 596 ; Jeremy on Eq. Jurisd. 307. It is not competent to the legislature to direct in what manner this Court shall exercise a judicial act. *Dupy* v. *Wickwire*, 1 Chipman, 237 ; *Merrill* v. *Sherburne*, 1 New Hampsh. R. 199; *Holden* v. *James*, 11 Mass. R. 402 ; 2 Dallas, 409 ; *Picquet, Appellant &c.* 5 Pick. 65.

The statute of 1838 is unconstitutional, because it compels the officers of the bank to furnish evidence against themselves, in the case of a misdemeanor. *Att. Gen.* v. *Utica Ins. Co.* 2

Johns. Ch. R. 377 ; 1 Russell on Crimes, 66 ; 3 Brougham's Speeches, 25.

The act of incorporation expressly authorizes the defendants to transact business as a bank, until 1851, unless it shall be repealed or declared to be forfeited. The injunction impairs the rights and powers of the corporation, by abridging its active business existence ; at least for the time that the injunction continues. The grant is, of power to do business, not while the corporation proceeds legally or with safety to the public, but so long as the grant remains in force. The distinction between statutes affecting the remedy and those affecting the right, will not help the case. The power of the legislature to vary the remedy, must be so exercised as not to impair the right.

Authority to vacate a charter or decree the forfeiture of a franchise, is not incident to a court of chancery ; it is a mere statute delegation of power to that court. Angell & Ames on Corp. 511 ; *Att. Gen.* v. *Utica Ins. Co.* 2 Johns. Ch. R. 371. The provision in the statute, however, is, that an injunction shall issue, not if a court of chancery shall find that the bank ·is unsafe or has violated the laws, but if two of the commissioners shall be of that opinion. If any injunction is proper, it should issue on proof to a judicial tribunal, and on the exercise of judicial discretion. *Dash* v. *Van Kleeck*, 7 Johns. R. 493 ; 6 Bac. Abr. 378, *Statute, H*, cites Hob. 346. The statutes of New York are more guarded in this respect. 3 Revised Stat. of New York, 285, § 15, 16, 17, 18 ; *Bank of Columbia* v. *Att. Gen.* 3 Wendell, 588, 592, 603 ; *Att. Gen.* v. *Bank of Chenango*, 1 Hopkins, 596.

By the principles of chancery proceedings, an injunction is not granted in a doubtful case, and it is open to the Court, at any time, to dissolve it ; but here the defendants are subjected to an injunction differing from others, in not being granted upon the exercise of judicial discretion, and which is not to be dissolved until there shall be a hearing, that is, a hearing after answer, and proofs, and publication. Eden on Injunctions, 324, 88, 89, 112, 118 ; *Charles River Bridge* v. *Warren Bridge*, 6 Pick. 400 ; *Merrill* v. *Sherburne*, 1 New Hampsh. R. 212.

The clause in Revised Stat. c. 44, § 23, that every act o

incorporation " shall at all times be subject to amendment, alteration, or repeal, at the pleasure of the legislature, provided," &c., does not affect this case, because the defendants' charter was granted before the Revised Statutes went into operation, and because it expressly entitles them to all the powers and privileges contained in the 36th chapter of the Revised Statutes.

*C. P. Curtis* and *B. R. Curtis, contrà.* The object of the statute of 1838, to have a bank enjoined from transacting business after it has violated its charter, is clearly within the legitimate scope of legislative authority. Before what forum the case shall be tried and what shall be the jurisdiction of the court, are also to be determined by the legislature. There is nothing unconstitutional in the transfer of jurisdiction from a court of law to a court of chancery, and the legislature may prescribe, that for an abuse of a franchise the charter may be vacated by a court of chancery, or that the corporation may be perpetually enjoined from acting ; which amounts to the same thing. *Wales* v. *Belcher,* 3 Pick. 508 ; *The King* v. *Pasmore,* 3 T. R. 246 ; *The King* v. *The Mayor of London,* 1 Shower, 280 ; Com. Dig. *Franchise, G* 3 ; 2 Kent's Comm. (3d edit.) 312 ; *Terrett* v. *Taylor,* 9 Cranch 51 ; *Bank of Columbia* v. *Att. Gen.* 3 Wendell, 588 ; *Dartmouth College* v. *Woodward,* 4 Wheaton, 658 ; *Commonwealth* v. *Union Ins. Co.* 5 Mass. R. 232. A remedy given to or against a corporation, and even in its charter, is not a part of the rights of the corporation. If therefore the remedy was by *scire facias* or *quo warranto,* at the time when this bank was chartered, it was subject to the control of the legislature. And this process in chancery is more beneficial to the bank, since instead of being obliged to pass a judgment of forfeiture for a violation of the charter, the Court may proceed according to the equitable circumstances of the case. *Young* v. *Bank of Alexandria,* 4 Cranch, 384 ; *Bank of Columbia* v. *Okeley,* 4 Wheaton, 245 ; *Hawkins* v. *Barney's Lessee,* 5 Peters's Sup. C. Rep. 466 ; *McLaren* v. *Pennington,* 1 Paige, 108 ; *Fullerton* v. *Bank of United States,* 1 Peters's Sup. C. Rep. 615 ; *Sturges* v. *Crowninshield,* 4 Wheaton, 200 ; *Ogden* v. *Saunders,* 12 Wheaton, 349, 350 ; *Foster* v. *Essex Bank,* 16 Mass. R.

273; *Providence Bank* v. *Billings,* 4 Peters's Sup. C. Rep 562.

It is objected, that the bank commissioners exercise a visitatorial power which the legislature have no right to authorize. But the defendants took their charter subject to the provisions contained in the 36th and 44th chapters of the Revised Statutes; which, though not then in operation, yet by the references to them are to be regarded as a part of the charter. By *c.* 36, § 40, any *committee* appointed by the legislature for the purpose, may examine into the doings of any bank, and shall have free access to their books and vaults; and the substitution of commissioners affects only the remedy. And by *c.* 44, § 23, (referred to in *c.* 36, § 2,) every act of incorporation passed since the 11th of March, 1831, "shall at all times be subject to amendment, alteration, or repeal, at the pleasure of the legislature, provided" &c. See *St.* 1836, *c.* 124, § 1.

The defendants say that the statute of 1838 is unconstitutional, because it allows the commissioners to require bank officers to testify against themselves, of acts amounting to a misdemeanor. If this is unconstitutional, then the commissioners cannot execute this part of the statute, but all proper means of information will still be open to them. The statute however is not liable to this objection, for the officers may refuse to answer an interrogatory, if they have "justifiable cause."

The defendants further object, that their franchise is suspended until a hearing, and so the period for which their charter was granted is abridged. But the rights of corporations are not more sacred than those of individuals. It has always been the practice to arrest the property or person of an individual on mesne process, and this writ is but mesne process. It is said that if the legislature may require a temporary injunction, they may proceed to any extent and require one which shall be equivalent to a repeal of the charter. But this is not a valid objection against the power of the legislature. It is true they may act fraudulently, and thereby deprive a party of his rights, but it is not to be presumed that they will do so. *Ogden* v. *Saunders,* 12 Wheaton, 353, 354.

The injunction, it is alleged, is to stand till a *hearing,* and this is oppressive. But the "hearing" intended is one on

which the injunction may be dissolved, and the hearing on this motion to dissolve, is in effect like a hearing on an answer. The whole merits are involved in the injunction. *Fulton Bank v. New York and Sharon Canal Co.* 1 Paige, 311.

It is said this is a judicial writ, to be issued on proof satisfactory to the judicial mind of the court; whereas the statute requires it to be issued without such proof. We answer, assuming it to be a judicial writ, that the legislature have authority to determine, by a general law, what evidence shall satisfy the judicial mind of the court. *Kendall* v. *Kingston*, 5 Mass. R. 534; 12 Wheaton, 349. But there is nothing in the constitution to prevent an injunction being put on a footing with other mesne process; and if the legislature say it shall issue upon certain facts, the issuing of it is a ministerial and not a judicial act. We do not say that this is the true ground on which to put this case. The writ is partly judicial and partly ministerial. The justice is to be satisfied that the complainants are commissioners, and that they have examined into the condition of the bank, and that they are of opinion that an injunction ought to be granted.

The Court will hold the statute to be constitutional, if it can be done, and for this purpose will construe *shall* to mean *may*. Dwarris on Statutes, 712; *Wellington, Petitioner*, 16 Pick. 87.

SHAW C. J. delivered the opinion of the Court. This is a very important case, and it has demanded and received the early attention of the Court. The case involves the construction of the *St.* 1838, c. 14, providing for the appointment of bank commissioners, prescribing their duties, and making various provisions for proceedings, in relation to banks which have failed to comply with the provisions of their respective charters, or which are supposed to be insolvent, and whose further proceedings may be deemed dangerous to the public.

Before considering the defendant's answer to the bill, a preliminary question arose of so much importance, that it was thought advisable to bring the matter before the full Court as early as the convenience of the Court would admit, and with that view, precedence was given it, and it was taken up, on the first day of the present term. The defendants contend, that, without regard to the merits of the bill or the facts stated in the answer, they have a right to have this injunction imme-

Common-
wealth
*v.*
Farmers and
Mechanics
Bank.

diately dissolved ; that the law under which it issued, is uncon-
stitutional or beyond the just limits of legislative power ; that in
this respect it is inoperative and void ; that the injunction,
though required by the statute, improvidently issued and
without warrant of law, and therefore ought now to be dis-
solved.

If the law is justly open to the objections mentioned, it can
hardly be denied that the consequences suggested must follow.
But such a legislative act is not to be declared inoperative and
void, as not being within the limits of legislative authority, un-
less it is clearly shown to be so.

The first objection is, that this act is an interference of
the legislature, and an assumption of judicial power, because
it makes it the duty of the judge, in a particular case, to
perform a judicial act, that of issuing an injunction. But we
are of opinion, that the act is not justly open to objection
in this respect. It does not direct that an injunction shall be
issued against a bank in Adams ; it provides prospectively by
a general law, in regard to all banks, constituting a large class
of corporations, that in a given state of facts, an injunction
shall issue, to continue until a hearing can be had.

But it is regarded as a restraint upon the judicial power,
by requiring an injunction to be issued by a judge, without ex-
ercising a judicial power in deciding upon the sufficiency of
the proofs offered. In order to decide upon the force of this
objection, it is necessary to consider,

1. The objects which the legislature had in view in the
adoption of these measures ;

2. The means which they have adopted for accomplishing
those objects ; and

3. Whether in the ends proposed, or in the means pre
scribed, the legislature have transcended the powers vested
in them by the constitution, or exceeded the just limits of
legislative authority.

The manifest object which the legislature had in view, was
to provide as far as practicable for the prevention and redress
of the evils and mischiefs both to the public and to individuals,
proceeding from the violations of their charters by banks, and
from their insolvency. The object was to prevent their be-

coming dangerous to the public by their mismanagement and breach of the laws ; and to provide relief for their creditors, as far as possible, when they have become insolvent.   When it is considered how important it is to all the great interests of the community, that banks should be managed uprightly and with integrity, and according to the rules of law prescribed for their regulation, in their charters and by general laws, and how important it is that they should enjoy the confidence of the community, there seems to be no doubt that the objects proposed are proper subjects for the exercise of legislative power.

In case, therefore, either of violation of charter, or of insolvency, it is a legitimate exercise of legislative power, to provide, first, for a proper and effectual mode of ascertaining the facts, by a judicial investigation, upon which the supposed delinquency depends ; and secondly, for securing the assets of the delinquent institution to as large an extent as possible, in order to provide for a payment in full amongst all the creditors, or if not sufficient for that purpose, then for an equal distribution ; and if there is a surplus, then for an equal distribution amongst the stockholders and others interested.

2. Supposing these to be suitable and proper objects for the exercise of legislative power, the more material question is, whether the means provided by this statute are legitimate. Whenever either a forfeiture of charter or insolvency are to be inquired into, there must be some mode of judicial proceeding, some suit must be instituted.   Such mode may be properly directed by law ; subject only to the conditions, that it be fair and impartial, calculated to secure and preserve the rights of all parties to be affected by it.   It is desirable that it should be as nearly conformable as conveniently may be, to the course of judicial proceedings in like case.

Such a suit may to a certain extent interfere with the liberty of action, and even with the right of property, of such institution ; but this cannot be considered as going beyond the limits which justice requires, and which the law in like cases allows, if it extend no further than to preserve the property until the inquiry can be had, and to secure it for a distribution amongst creditors, stockholders and others entitled to it, in case such should be the final judgment upon such inquiry.   It is like the

case of an attachment on mesne process, or a *distringas*, or a sequestration, where the property is taken into the custody of the law at the commencement of the suit, to await the result, or like an arrest upon a *capias* or *ne exeat*, which deprives the party in the first instance and before hearing, of his personal liberty, or compels him to give security for his appearance. It is justified on the ground that without it justice could not be done, and the effect of a judgment might be eluded.

But if it is competent for the legislature to accomplish these objects, by any mode of judicial proceeding, it may as well be done in the form of a bill in equity as in any other. It seems to be a well settled rule, that where the legislature have the power to provide redress for either a public or private wrong, the remedy or mode of redress is wholly a subject of legislative discretion. If an injunction is better adapted to accomplish the objects proposed, than any other form of judicial process, there seems no reason why the legislature should not have power to direct it. It has already been provided for in the case of waste, where it may issue at once ; so to prevent a nuisance, where the mischief to be done would be irreparable.

But the main objection is, that this is a usurpation of judicial power, because it requires the judge, in the first instance, on the complaint of the bank commissioners, without a hearing of evidence to satisfy his own mind, to issue an injunction.

But it appears to us that this is not a just view of this act. The act first provides for the appointment of commissioners, who are to be sworn to the faithful performance of their duty. It provides ample means for enabling them to conduct their inquiries into the condition of banks. It then provides, that if upon examination of any bank a majority of the commissioners shall be of opinion, that the same is insolvent, or, that its condition is such as to render its further progress hazardous to the public, or to those having funds in its custody, and also, that it has exceeded its powers or has failed to comply with all of the rules, restrictions and conditions provided by law, they may apply to a justice of this Court, to issue an injunction to restrain the corporation, in whole or in part, from further proceeding with its business, until a hearing of the corporation can be had, and the justice shall forthwith issue such process, and

after a full hear.ng of the corporation, may dissolve or modify the injunction, or make the same perpetual, &c. The law in effect declares, that a complaint or representation, made by such officer, upon such examination, and of such facts, shall be deemed *primâ facie* evidence, that the bank is acting unlawfully, that its further operations are dangerous to the community, and that a case has occurred, in which it is proper and necessary, first, to issue process to call on the bank to answer to the complaint; and secondly, to secure their property in the mean time from being secreted, or withdrawn and appropriated to favored creditors, instead of being equally distributed. If it provided, that upon similar facts, being shown by affidavit, like process should issue, as attachment, *distringas* or sequestration, it would hardly be considered obnoxious to the objection now made. Indeed an injunction is often issued in other cases, upon affidavit, before hearing or notice. But such a complaint, from responsible officers, is fully as much entitled to credit as an affidavit. It is in some measure like an inquisition, somewhat like an indictment, but perhaps still more like an information, all of which are known forms of proceeding to put a party on trial.

Again, here is room for the exercise of judicial powers. The judge is judicially to inquire and ascertain, that the complainants are such bank commissioners; that they have examined the bank complained against, in the manner required by the statute; that they have come to the opinion, that the bank is insolvent, and that its condition is such, that its further proceeding is dangerous to the public, and that it has violated its charter, and also, that they have made application in such form and manner as the law requires. There is also room for the exercise of judicial discretion, in determining upon the complaint, to what extent such injunction shall go, whether to prevent their issuing bills only, or to prevent their paying bills, or deposits, or other debts; in short, whether it shall be a total suspension of all their operations, or a slight interference with them. The injunction is to be adapted to the case, and to meet the mischief, whatever it may be, suggested by the complaint. Also in fixing a time, at which the hearing shall be had and to which the injunction shall be continued. We are satisfied that by the term " hearing " in this part of the statute, is to be understood

a summary hearing, before a single judge, and upon such hearing he may dissolve, continue or modify the injunction, in such manner as the proofs offered upon such hearing, may in his judgment require. This fixing a time for hearing and for continuing the injunction is an important proceeding, requiring the exercise of a sound judgment applied to a complicated state of facts. In cases where the banks most abound, in the metropolis, and where a judge may usually be found, it would be practicable to have a hearing almost instanter ; in other cases, a longer time would be necessary.

3. It was objected that this act is unconstitutional in this, that it authorizes a mode of investigation by the commissioners, by which bank directors and other officers may be called upon to make answers to inquiries which may criminate themselves, and render them liable to penalties. But we think that the answer given at the bar is decisive. When a legislative act has passed with all the formalities, required by the constitution to give it the force of law, it is to be presumed to be the exercise of a constitutional authority, unless the contrary plainly appears And, further, if it does appear, that in some particular it conflicts with a provision of the constitution, which is the supreme law, that part of it only will be declared by the judicial department, to be invalid and void, which is thus found to be contrary to the constitution, and in all other respects, the act will be considered good and in force.

The specific objection is, that by the constitution, no person is bound to furnish evidence, which may render him liable to a criminal prosecution ; but by the act, all directors and other officers, are liable to be put to interrogatories, which may thus oblige them to criminate themselves.

To this there are several answers ; first, taking the constitution to be as supposed, then it will be presumed, that the provision was to be taken with the implied exception, that no one shall be obliged to criminate himself. Again, supposing it should be held that the legislature intended to confer a power on the commissioners to that extent, the statute would be void only in this particular ; no such power would be conferred by the form of words, because the legislature could not confer it ; and should the commissioners attempt the exercise of such a

power, those only who suffer by it, will have a right to complain, and they will have their remedy. In all other respects the act will be valid.

But there is another answer, perhaps equally decisive. The immunity given to all the citizens of the Commonwealth, by which they are exempted from the obligation to criminate themselves, is a privilege, which each individual may claim for himself, or may waive, as he pleases. The act authorizes the commissioners to examine under oath, all directors, officers and agents of banks. It may be presumed, that in most cases, such officers and agents would prefer to waive their privilege, and make a full disclosure of all the facts within their knowledge, rather than lie under the suspicion, which their declining to answer would imply ; and in such case, there is no reason why the commissioners, and through them the public, should not avail themselves of information, which such answers voluntarily given would afford.

But after all, the provision of the act seems hardly liable to the objection made to it. It authorizes the commissioners to summon and examine under oath, directors, officers, agents and other persons, and it imposes a penalty upon those, who *without justifiable cause* shall refuse to appear and testify. If they should decline to testify in any particular instance for a justifiable cause, they would not be liable for the penalty. And to decline answering in a case, in which it is provided by the constitution, that they shall not be held to answer, would plainly be a justifiable cause.

The other ground of objection to the constitutionality of this act is, that it impairs the obligation of a contract.

It may be conceded for the purposes of this inquiry, that an act of incorporation is to be construed, to be a contract between the government on the one side, and those who accept the act and become a corporation and their successors on the other side ; and the corporate power granted, cannot be revoked or annulled by an after act of legislation, unless a power has been reserved for that purpose, or with the consent of the corporation.

But in applying this rule practically it is necessary to consider, how far and to what subjects this contract extends. It is clearly a stipulation on the part of the government, that the

corporation shall be and continue a corporation, for an indefi‑ nite time, or for the term limited in the act, unless sooner forfeited for some cause recognised by existing laws as a cause of forfeiture ; that their constitution, organization, and mode of action, as prescribed by their charter, shall not be annulled or changed by the legislature ; that members shall not be added or removed ; that modes of election, expulsion or suspension of members, shall not be altered ; and that whatever belongs to their organic constitution and action, as bodies poli‑ tic, shall continue and be determined, by the terms of the charter.    In addition to which, the powers specially granted to them, are not to be withdrawn or diminished.

But such immunities and privileges do not exempt corpora‑ tions from the operation of those laws made for the general regulation and government of the citizens.    If a law is made fixing the rate of interest, and what shall be deemed usury, and its legal consequences, corporations as well as individuals must conform to it.    So as to the manner in which demands shall be made, notices given, and liabilities of promisors, drawers and indorsers, on bills and notes, determined.    Respecting such cases, there would probably be no difference of opinion.    The great difficulty is, in a complicated case, to discriminate be‑ tween regulations, which affect corporations, as such corpora‑ tions, and those which are of general application.

The first particular exception taken to this act, as diminish‑ ing the rights of corporations as such and thereby impairing the obligation of contracts, is, that it diminishes the time, for which, by charter, they were empowered to act as a corporation, viz. all the time until 1851 ; that granting an injunction, before a hearing, which may diminish this term of unrestricted action, because the injunction may go to the entire suspension of their corporate functions, does diminish the time for which they were expressly authorized to act.    But we think this objection is not well founded.    The suspension is not an arbitrary diminution of the period of their organic existence as a corporation.    They are incorporated on many conditions, some express, and some implied by law.    The most obvious one is, that they will com‑ ply with the terms of their charter, one of which is, that they shall conduct their business according to banking principles and

the rules of law.   As they may violate the provisions of their charter and incur a suspension or forfeiture, there must be some mode prescribed for a judicial inquiry into the fact, whether they have so violated the terms of their charter, and for providing redress for those who may have suffered from such violation.   The violation may be of such a nature, as more directly to affect the rights of individuals, who may have their remedies by suits at law or in equity, as the case requires ; and they may obtain security for their violated rights, by attachment, sequestration, or such other process as the law furnishes, either before or after obtaining judgment.   But the violation may be of such a nature as to affect the rights of great numbers, so that it may be considered as an injury to the community at large, in which case it is more consistent with public safety and convenience, and entirely consonant to the whole course of the administration of justice, to institute a process, in the name, and under the authority of the government, bound as it is to provide security for its citizens.

When therefore the law provides for the commencement of such a process, upon such probable grounds as shall be deemed sufficient to justify a well founded apprehension of misconduct, it is not an arbitrary suspension of the corporate powers of the bank, but a species of compulsory process, analogous to the constant course of action in similar cases, designed to take the subject of controversy into the custody of the law, during the inquiry, to prevent further progress in a course thus probably shown to be mischievous and dangerous, and to secure the means of affording redress to the sufferers, in case the misdemeanors alleged shall be found to exist.   The injunction contemplated is not the adjudication of a forfeiture, it is not an entire suspension of the corporate functions of the bank, and may be only an inconsiderable interruption, and therefore is not in any just sense a diminution of the time, for which the bank was granted.

The objection assumes only a slightly modified form, when it is urged that the bank has a right to hold its charter, until a judicial power acting judicially, takes away the chartered rights. This is true ; but an injunction before hearing, is not a judgment of forfeiture or in the nature of such a judgment.   It might

indeed have been as well termed a prohibition, a sequestration, or have had any other legal designation. It is as in the case of waste and nuisance, to prevent mischief, to keep the matter *statu quo* until a hearing can be had, and to preserve as far as possible the means of affording redress by the judgment which may be afterwards given.

In examining a great question of corporate rights and immunities, and the extent of the legislative power, the question is, whether in any form the legislature can exercise the power, consistently with the provisions of the charter and the rights of the corporation, whether the power results from the general laws, or from particular reservations in the particular charter or class of charters to which it belongs.

If the power exists, the mode of exercising it may be such as the legislature may direct. The remedy, therefore, for a violation of duty, may be altered and changed by legislative provisions, if the power of accomplishing the same objects by any means, is within the legitimate scope of legislative authority.

The Court are of opinion, that this act, in the particulars stated, was not unconstitutional, that the statute under which the injunction issued, had the authority of law, that the injunction rightfully issued, and that the defendants, before answer or summary hearing and proofs offered, are not entitled to have it dissolved.